UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ISAAC MONTANEZ,

                    Plaintiff,                1:13-CV-1262
                                                           (GTS/DJS)

v.

THE CHEESECAKE FACTORY
RESTAURANTS, INC.,

                    Defendant.
_____

APPEARANCES:                                          OF COUNSEL:

ISAAC MONTANEZ
  Plaintiff, *Pro Se*
502 Clinton Avenue
Apt. #4, Floor 3
Albany, New York 12206

JACKSON, LEWIS P.C.                            CLEMENTE J. PARENTE, ESQ.
  Counsel for Defendant
18 Corporate Woods Blvd.
Albany, New York 12211

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

      Currently before the Court, in this employment discrimination action filed by Isaac Montanez ("Plaintiff") against the Cheesecake Factory Restaurants, Inc. ("Defendant"), is Defendant's motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), or in the alternative, motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 29.) For the reasons set forth below, Defendant's motion is granted.

## I. RELEVANT BACKGROUND

### A. Plaintiff's Amended Complaint

Generally, liberally construed, Plaintiff's Amended Complaint alleges as follows. Plaintiff is Hispanic and is of Puerto Rican descent. (Dkt. No. 7, at 3 [Pl.'s Am. Compl.].) On June 30, 2011, Plaintiff was hired to work as a dishwasher in one of Defendant's restaurant establishments. (*Id.*) During his employment, Plaintiff was harassed by various supervisors. (*Id.*) Specifically, beginning in August 2011, Plaintiff was (1) forced to work the "machine or loader out of 4-5 different areas," (2) followed by managers and subjected to comments about how he was performing his tasks, and (3) forced to wait to take his breaks until after the restaurant closed while other employees were allowed to take their breaks earlier. (*Id.*)

In June 2012, Plaintiff was promoted to the position of prep cook without a raise. (*Id.*) Beginning in August 2012, his managers forced him to do extra work as a prep cook while also being required to do the "cleaner's job." (*Id.* at 3, 5.) In October 2012, Plaintiff was demoted back to a position in the dish room and was given double shifts, requiring him to work both mornings and nights. (*Id.* at 5.) In December 2012, three managers brought Plaintiff into a room where they made racial comments about "Puerto Ricans and blacks." (*Id.*) During the same month, Plaintiff requested time off from work because one of his family members had died; however, that request was denied. (*Id.*) In January 2013, Plaintiff continued to be assigned multiple job duties by his managers ranging from his duties as a dishwasher to prep cook and doing the cleaner's job. (*Id.*) When assigning these tasks, Plaintiff's managers told him he could quit his job if he wanted to do so. (*Id.*)

In March 2013, Plaintiff's managers continued to harass him by yelling at him, accusing him of smoking drugs, and asking him whether he was "ready to die or to take a cap for them." (*Id.*) Plaintiff alleges that he began noticing cars following him home and he became fearful that they contained his managers. (*Id.* at 4.) On April 20, 2013, Plaintiff dual-filed a discrimination complaint with the New York State Division of Human Rights ("DHR") and the Equal Employment Opportunity Commission ("EEOC") based upon his treatment while employed by Defendant. (*Id.*) Thereafter, Plaintiff's hours at work were reduced and his supervisors continued to give him a difficult time about his work ethic while following him around the restaurant. (*Id.*) On April 24, 2013, Plaintiff was admitted to a hospital where he was treated for his mental health and diagnosed with depression, anxiety, and high blood pressure. (*Id.*) In July 2013, Plaintiff returned to work but had difficulty focusing and continued to be paranoid and scared of his managers. (*Id.*) In October 2013, Plaintiff left his shift because he was scared for his life and never returned to his position at the Cheesecake Factory. (*Id.*)

Based upon these allegations, Plaintiff's Amended Complaint asserts claims for employment discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964. (*Id.* at 2.)

### B. Procedural History

Plaintiff filed his original Complaint in this action on October 11, 2013. (Dkt. No. 1 [Pl.'s Compl].) At some point in time, the DHR facilitated settlement discussions between the parties related to Plaintiff's complaints that he had filed with the DHR and EEOC. (Dkt. No. 16, Attach. 1 [Ex. A to Def.'s Answer].) As a result of those discussions, Plaintiff signed a Stipulation of Settlement on May 1, 2014, pursuant to which he received a settlement payment in

the amount of two thousand five hundred dollars ($2,500.00) in exchange for the release of his employment discrimination and retaliation claims under Title VII. (*Id.*) Specifically, the Stipulation of Settlement states, in pertinent part, as follows:

> [Plaintiff] releases and discharges the [Cheesecake Factory] . . . from all charges, complaints, claims, liabilities, obligations, promises, agreements, actions, or causes of action, debts, attorneys fees or other costs or expenses, of any nature whatsoever, including but not limited to employment discrimination claims arising under local, state or federal statute, regulation, or ordinance relating to employment discrimination or other employment conditions, or prohibiting termination or retaliation for reporting a violation of the law, or any other claim related to or arising out of the [Plaintiff's] employment by the [Cheesecake Factory], known or unknown, which the [Plaintiff] may ever before have had or claim to have had, from the beginning of the world through the date of this agreement.

(*Id.*, ¶ 5.)

Approximately seven weeks after signing the Stipulation of Settlement, Plaintiff filed an Amended Complaint in this action. (Dkt. No. 7 [Pl.'s Am. Compl.].)

## II. PARTIES' ARGUMENTS ON DEFENDANT'S MOTION

### A. Defendant's Memorandum of Law

In its memorandum of law, Defendant argues that Plaintiff's Amended Complaint should be dismissed because Plaintiff executed the Stipulation of Settlement knowingly and voluntarily and, therefore, waived his claims. In support of its motion, Defendant cites language from the Stipulation of Settlement in which Plaintiff agreed that he was "entering into this stipulation willingly, without any coercion of duress." (Dkt. No. 29, Attach. 1, at 5 [Def.'s Mem. of Law].) In addition, Defendant cites *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 438 (2d Cir. 1998), where the Second Circuit applied a "totality of the circumstances" inquiry to ascertain

whether a release was "knowing and voluntary." (*Id.* at 6.) The Circuit enumerated a number of factors that are relevant to this inquiry:

> 1) the plaintiff's education and business experience, 2) the amount of time the plaintiff had possession of or access to the agreement before signing it, 3) the role of plaintiff in deciding the terms of the agreement, 4) the clarity of the agreement, 5) whether the plaintiff was represented by or consulted with an attorney, and 6) whether the consideration given in exchange for the waiver exceeds employee benefits to which the employee was already entitled by contract or law.

*Livingston*, 141 F.3d at 438. Courts have also considered a seventh factor of "whether the employer encouraged the employee to consult an attorney and whether the employee had a fair opportunity to do so." *Id.* These factors "are not exhaustive and not every factor must be in defendant's favor for the release to be found knowing and voluntary; rather, all of the factors must be examined under the totality of the circumstances." *Neal v. JPMorgan Chase Bank, N.A.*, 10-CV-1157, 2012 WL 3249477, at *9 (E.D.N.Y. Aug. 8, 2012).

With respect to the first factor, Defendant argues that courts require that a plaintiff have only a high school equivalency diploma. (Dkt. No. 29, Attach. 1, at 7 [Def.'s Mem. of Law] [citing *Brewer v. GEM Indus. Inc.*, 14-CV-0778, 2015 WL 773800, at *5 (N.D.N.Y. Feb. 24, 2015) (D'Agostino, J.)]). Defendant argues that Plaintiff was capable of understanding the terms of the Stipulation of Settlement, particularly because the DHR assisted the parties with the settlement. (Dkt. No. 29, Attach. 1, at 7 [Def.'s Mem. of Law].)

With respect to the second factor, Defendant argues that Plaintiff had more than sufficient time to review the Stipulation of Settlement before signing it. (*Id.*) Specifically, other parties to the agreement signed it on April 23, April 24, and April 29, 2014, and Plaintiff waited eight days before signing the Stipulation of Settlement (on May 1, 2014). (*Id.*)

With respect to the third factor, Defendant argues that, although the Stipulation of Settlement was prepared by the DHR, Plaintiff played a role in deciding the terms of the agreement because he received significant monetary compensation in return for his signature. (*Id.* at 8.)

With respect to the fourth factor, Defendant argues that the Stipulation of Settlement was clear and concise. (*Id.*) Specifically, Defendant argues that the Stipulation of Settlement was just over two pages in length and clearly explained what monetary consideration was being offered and what Plaintiff would be forfeiting in exchange for that compensation. (*Id.*)

With respect to the fifth factor, Defendant argues that, although Plaintiff did not retain his own counsel and was not advised specifically in the Stipulation of Settlement to consult with an attorney, the DHR assisted the parties with the settlement. (*Id.* at 9.)

Finally, with respect to the sixth factor, Defendant argues that Plaintiff would not have otherwise received the $2,500.00 in compensation given to him in exchange for his waiver under the terms of his employment. (*Id.*)

Based upon the foregoing, Defendant argues that the totality of the circumstances demonstrates that Plaintiff knowingly and voluntarily signed the Stipulation of Settlement waiving his Title VII claims. (*Id.*) Because Plaintiff gladly accepted the settlement payment tendered to him by the Cheesecake Factory, Defendant argues that he should be held to the promises that he gave in exchange for receiving the benefits of the bargain. (*Id.*)

### B. Plaintiff's Opposition Memorandum of Law

Liberally construed, Plaintiff's opposition memorandum of law argues that it was Plaintiff's understanding that, when he signed the Stipulation of Settlement, he was releasing only some of his claims but not all of them. (Dkt. No. 34, at 1 [Pl.'s Opp'n Mem. of Law].)

Specifically, Plaintiff argues that, because he had filed two complaints with the DHR and the EEOC (one for discrimination and the second for retaliation), both of which had different case numbers, as well as a complaint in federal court, he apparently believed that the settlement would affect only some of his claims. (*Id.*) Accordingly, Plaintiff argues that, because he did not waive all of his claims, he should be allowed to proceed with the present action. (*Id.*)

### III. RELEVANT LEGAL STANDARD

In deciding a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c), district courts employ the same standard applicable to motions to dismiss pursuant to Rule 12(b)(6). *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010). Accordingly, the Court will review Defendant's motion under the standard applicable to a motion to dismiss.

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cty.*, 549 F. Supp. 2d 204, 211, nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, a few words regarding that ground are appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp. 2d at 212, n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at 212, n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp. 2d at 212, n.18 (citing Supreme Court cases); *Rusyniak v. Gensini*, 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp. 2d at 213, n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atl. Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the

plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968-69. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id*. at 1965-74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id*. at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S.Ct. at 1950 [internal quotation marks and citations omitted]. However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action,

supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 129 S.Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

This pleading standard applies even to *pro se* litigants. While the special leniency afforded to *pro se* civil rights litigants somewhat loosens the procedural rules governing the form of pleadings (as the Second Circuit has observed), it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed. R. Civ. P. 8, 10 and 12.[1] Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed. R. Civ. P. 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow.[2] Stated more simply, when a plaintiff is proceeding *pro se*, "all normal rules of pleading are not absolutely suspended." *Jackson*, 549 F. Supp. 2d at 214, n.28 [citations omitted].[3]

---

[1] *See Vega v. Artus,* 610 F. Supp. 2d 185, 196 & nn.8-9 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases); *Rusyniak,* 629 F. Supp. 2d at 214 & n.34 (citing Second Circuit cases).

[2] *See Rosendale v. Brusie*, 374 F. App'x 195, 196 (2d Cir. 2010) ("[A]lthough the courts remain obligated to construe a pro se complaint liberally, . . . the complaint must contain sufficient factual allegations to meet the plausibility standard."); *Vega,* 610 F. Supp. 2d at 196, n.10 (citing Supreme Court and Second Circuit cases); *Rusyniak,* 629 F. Supp. 2d at 214 & n.34 (citing Second Circuit cases).

[3] It should be emphasized that Fed. R. Civ. P. 8's plausibility standard, explained in *Twombly*, was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus*, in which (when reviewing a *pro se* pleading) the Court stated, "*Specific* facts are not necessary" to successfully state a claim under Fed. R. Civ. P. 8(a)(2). *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) [emphasis added]. That statement was merely an abbreviation of the often-repeated point of law–first offered in *Conley* and repeated in *Twombly*–that a pleading need not "set out *in detail* the facts upon which [the claim is based]" in order to successfully state a claim. *Twombly*, 127 S. Ct. 1965, n.3 (citing *Conley*, 355 U.S. at 47) [emphasis added]. That statement did not mean that all pleadings may achieve the requirement of "fair notice" without ever alleging any facts whatsoever. Clearly, there must still be enough fact set out (however set out, whether in detail or in a generalized fashion) to raise a right to relief above the speculative level to a plausible level. *See Rusyniak,* 629 F. Supp. 2d at 214 & n.35 (explaining holding in *Erickson*).

Finally, a few words are appropriate regarding what documents are considered when a dismissal for failure to state a claim is contemplated. Generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case.[4] Moreover, in the Second Circuit, a *pro se* plaintiff's papers in response to a defendant's motion to dismiss for failure to state a claim may be considered as effectively amending the allegations

---

[4] *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. . . . Where a document is not incorporated by reference, the court may neverless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . . However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document. It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") [internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

of his complaint–to the extent those papers are consistent with the allegations in the complaint.[5]

## IV. ANALYSIS

After carefully considering the matter, the Court grants Defendant's motion for the reasons stated in Defendant's memorandum of law. (Dkt. No. 29, Attach. 1, at 5-10 [Def.'s Mem. of Law].) To those reasons, the Court adds the following two points.

First, the Court is unpersuaded by Plaintiff's argument that he was unaware of the rights he would be forfeiting by entering into the Stipulation of Settlement. Specifically, the language from the agreement is unambiguous and clear that, by signing the agreement, Plaintiff would be releasing Defendant "from *all* charges, complaints, claims, liabilities, obligations, promises, agreements, actions, or causes of action, . . . of *any nature whatsoever*, including but not limited to *employment discrimination claims* arising under local, state or *federal statute*, regulation, or ordinance *relating to employment discrimination or other employment conditions, or prohibiting termination or retaliation for reporting a violation of the law* . . . which the [Plaintiff] may ever before have or claim to have had, *from the beginning of the world through the date of this agreement*." (Dkt. No. 16, Attach. 1, ¶ 5 [Ex. A to Def.'s Answer]) (emphasis added). Plaintiff does not specify what claims he believed he was waiving when he entered into the Stipulation of

---

[5] *See Drake v. Delta Air Lines, Inc.,* 147 F.3d 169, 170 n.1 (2d Cir. 1998) (per curiam) ("[W]e deem Drake's complaint to include the facts contained in his memorandum of law filed in response to Delta's 1996 motion to dismiss."); *Gill v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987) ("In his affidavit submitted in opposition to defendants' motion to dismiss, Gill asserts that Mooney's actions amounted to deliberate and willful indifference. Liberally construed under *pro se* pleading standards, Gill's allegations against Mooney involve more than ordinary lack of due care for the prisoner's interests or safety, . . . and therefore state a colorable claim under the Eighth and Fourteenth Amendments.") (internal quotation marks and citation omitted); *Donhauser v.Goord*, 314 F. Supp. 2d 119, 212 (N.D.N.Y.) (Sharpe, M.J.) ("[I]n cases where *a pro se* plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside of the complaint to the extent they "are consistent with the allegations in the complaint.") (collecting district court cases), *vacated on other grounds*, 317 F. Supp. 2d 160 (N.D.N.Y. 2004) (Hurd, J.).

Settlement or explain how any of his claims filed with the DHR and EEOC are different from those asserted here. (*See generally* Dkt. No. 34.) The fact that the language contained in the Stipulation of Settlement did not specifically reference Title VII does not support Plaintiff's argument because the language states that Plaintiff would be waiving any retaliation and discrimination claims he may have had against the Cheesecake Factory. *See Smith v. Amedisys Inc.*, 298 F.3d 434, 443 (5th Cir. 2002) (stating that "[t]here is no obligation . . . under Title VII or federal common law that a release must specify Title VII or federal causes of action to constitute a valid release of a Title VII claim") (citing cases); *accord*, *Shain v. Ctr. for Jewish History, Inc.*, 04-CV-1762, 2006 WL 3549318, at *3 n.6 (S.D.N.Y. Dec. 7, 2006).

Second, as Defendant has repeatedly noted in its motion papers, DHR assisted the parties with the Stipulation of Settlement and Plaintiff has not alleged, or even argued, that he was coerced into entering this agreement, under duress or incapacitated at the time it was executed, or subjected to anything that would call the enforceability of the Stipulation of Settlement into question.[6] Indeed, Plaintiff had more than a week to review the agreement, which was only two pages in length, before he signed it. *See Shain*, 2006 WL 3549318, at *4 (holding that "several hours" to review the release was sufficient); *Cordoba v. Beau Dietl & Assocs*, 02-CV-4951, 2003 WL 22902266, at *5 (S.D.N.Y. Dec. 8, 2003) (holding four days to review release was sufficient); *Dewey v. PTT Telecom Neth., US, Inc.*, 101 F.3d 1392 (2d Cir. 1996) (holding four days was sufficient to review release and noting that, "although Dewey did not consult an

---

[6] Even if any of these defenses did apply, the Court notes that Plaintiff has kept the monetary compensation given to him through the settlement and has failed to return those funds, thereby ratifying the agreement. *See Livingston v. Bev-Pak, Inc.*, 112 F. Supp. 2d 242, 249 (N.D.N.Y. 2000) (Smith, M.J.) (stating that "[r]atification is an act by which an otherwise voidable, and a result, invalid contract is confirmed and thereby made valid. . . . It occurs at the point that a party learns that his prior agreement not to sue is voidable but continues to accept the benefits of that agreement"); *Davis v. Eastman Kodak Co.*, 04-CV-6098, 2007 WL 952042, at *6 (W.D.N.Y. Mar. 29, 2007).

attorney prior to signing the release, there is nothing to indicate that she did not have the opportunity to do so").

For all of the foregoing reasons, the Court finds that, under the totality of the circumstances, Plaintiff's execution of the Stipulation of Settlement and the waiver of his rights were both knowing and voluntary. Therefore, the Stipulation of Settlement is enforceable and Plaintiff has waived his right to pursue his claims in the present action against Defendant.

**ACCORDINGLY** it is

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 29) is **GRANTED**.

The Clerk of the Court is directed to enter Judgment for Defendant and close this case.

Dated: March 22, 2016
       Syracuse, New York

                                      Hon. Glenn T. Suddaby
                                      Chief, U.S. District Judge